COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Frank and Clements


CHARLES EDWARD REED, III

                                    MEMORANDUM OPINION[*]
v.    Record No. 0466-01-4              PER CURIAM
                                     AUGUST 14, 2001
MICHAEL ABBOTT HERSAM AND
 REBECCA ANN HERSAM


            FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                  James W. Haley, Jr., Judge

         (Timothy W. Barbrow, on brief), for
         appellant.

         No brief for appellee Michael Abbott Hersam.

         (Rebecca Ann Hersam, pro se, on brief).


     Charles Edward Reed, III, contends the trial judge erred in

finding that (1) Reed's continued relationship with his

illegitimate child, CJR, would be detrimental to the child; (2)

the adoption of CJR by Michael Hersham was in the child's best

interests; and (3) he unreasonably withheld consent to that

adoption.  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.  See

Rule 5A:27.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

Under familiar principles, we review the evidence on appeal in the light most favorable to the party who prevailed below, giving it all reasonable inferences fairly deducible therefrom. See Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). On January 24, 2001, the trial court conducted a hearing on Michael and Rebecca Hersam's petition to adopt CJR.[1] Reed, CJR's biological father, was incarcerated at the time of CJR's birth and has remained continuously incarcerated since that time. Rebecca Ann Hersam, nee Rebecca Ann John (mother), gave birth to CJR on May 26, 1995. Reed and mother never married. CJR was six years old at the time of the hearing.

Mother testified that she took CJR, who was then less than one year old, to visit appellant "on a couple of occasions while he was in a local jail." Due to the inappropriateness of the setting and because Reed focused more on mother than CJR, mother stopped the visitation. The last visit took place when CJR was approximately one year old. Mother acknowledged that Reed had written letters to CJR; however, she felt that his "references to criminal activity" were inappropriate for a child.

William Tignor, Director of the Stafford County Department of Social Services, investigated the Hersams' petition for adoption,

---

[1] The record does not contain a transcript of the hearing; therefore, we rely on the recitation of facts from the written statement of facts signed by the trial judge.

-

conducted a home study, and prepared a report that was admitted into the record. Tignor found the home clean and well-furnished. According to Tignor, the Hersams "are wonderful parents, very good with kids. They treat their children with love, consideration, and patience." CJR is in excellent health and his mental and emotional development are normal. He enjoys "a warm and loving relationship with the [Hersams]." Mother's husband, Michael Hersam, "is the only father that [CJR] has known." Tignor indicated in his report that CJR "has no knowledge of his biological father and has no relationship with him." Moreover, he reported that Reed has a "violent, possessive personality" and that the mother was fearful of him. Based on Reed's circumstances, Tignor opined that his refusal to consent to the adoption unreasonably withheld an opportunity for CJR "to have permanence." Tignor unequivocally found the Hersams to be suitable parents for adoption.

Mother married Michael Hersam (Hersham) on July 27, 1996. Hersam has been a self-employed truck driver for eleven years. He owns his own truck, makes $60,000 per year, and provides health and life insurance for himself, the mother, CJR and the Hersams' other three children. Mother ceased all contact with Reed in 1996 when he advised her of his activities in prison, such as gambling, taking drugs and joining a gang. Hersam has supported CJR since 1996, and CJR refers to his stepfather as "Dad."

-

Reed testified that he "is serving a 70 year sentence, with 50 years suspended." The sentences were the result of 1989 convictions involving six burglaries and six larcenies. He was on probation when he fathered CJR out of wedlock and when he committed acts which led to his present incarceration. He became eligible for parole in 1997, but has been turned down every year. On August 17, 2000, Reed was denied parole due to "his serious disregard for property rights and his previous failure to obey laws while on probation." Reed's mandatory release date is August 11, 2007. A Department of Corrections report admitted at the hearing indicated that Reed's "anticipated" release dates "are based on the assumption that [Reed] will continue to earn good time" and that he will not have "good time" credits deducted "as a result of misbehavior." Reed testified that "he suffered from medical problems which limit his ability to work while incarcerated and will interfere and hamper his job opportunities upon his release."

Reed's father testified that mother "brought [CJR] to his home for less than 10 visits in 1995" and that he sent small sums of money to the child on special occasions.

The trial court found that Reed withheld his consent contrary to the best interests of CJR and that a continued relationship would be detrimental to the child's welfare. The trial court further found "that no relationship had ever existed between Mr. Reed and his child due in part to" Reed's criminal activity.

-

ANALYSIS

"An adoption over objection by a natural parent should not
be granted except upon clear and convincing evidence that the
adoption would be in a child's best interest and that it would
be detrimental to continue the natural parent-child
relationship." Frye v. Spotte, 4 Va. App. 530, 532, 359 S.E.2d
315, 317 (1987). "The trial court's decision, when based upon
an ore tenus hearing, is entitled to great weight and will not
be disturbed on appeal unless plainly wrong or without evidence
to support it." Id. at 537, 359 S.E.2d at 319-20. An adoption
of a child may be ordered without the birth parent's consent "if
that parent's consent to the adoption is being withheld 'contrary
to best interests of the child as set forth in [Code]
§ 63.1-225.1.'" Hickman v. Futty, 25 Va. App. 420, 426, 489
S.E.2d 232, 234 (1997) (citation omitted).

Code § 63.1-225.1 provides, in pertinent part, as follows:

> In determining whether the valid consent of
> any person whose consent is required is
> withheld contrary to the best interests of
> the child, . . . the court shall consider
> whether the failure to grant the petition
> for adoption would be detrimental to the
> child. In determining whether the failure
> to grant the petition would be detrimental
> to the child, the court shall consider all
> relevant factors, including the birth
> parent(s)' efforts to obtain or maintain
> legal and physical custody of the child,
> whether the birth parent(s)' efforts to
> assert parental rights were thwarted by
> other people, the birth parent(s)' ability
> to care for the child, the age of the child,
> the quality of any previous relationship

-

between the birth parent(s) and the child and between the birth parent(s) and any other minor children, the duration and suitability of the child's present custodial environment and the effect of a change of physical custody on the child.

Under the statute, "not only must the prospective adoptive placement serve the child's best interests, but the continued relationship with the non-consenting parent must prove to be detrimental."  Hickman, 25 Va. App. at 431, 489 S.E.2d at 237. Applying this standard, we have held as follows:

> Detriment is determined, as it was under the prior case law, by considering the non-consenting parent's fitness, or ability, to parent the child as well as the relationship the non-consenting parent maintains with the child and other children, if any.  That relationship, as it was under the prior case law, is evaluated in terms of the non-consenting parent's willingness to provide for the child, that parent's record of asserting parental rights, taking into consideration the extent to which, if any, such efforts were thwarted by other people, and the quality of the parent-child relationship.

Id. at 431-32, 489 S.E.2d at 237.

> "Finding that the continuation of a poor, strained or nonexistent parent-child relationship will be detrimental to a child's future welfare is difficult.  No one can divine with any assurance the future course of human events.  Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.  Trial courts may, when presented with clear and convincing evidence, make an informed and rational judgment and determine that the continued relationship between a child and a

-

non-consenting parent will be detrimental to the child's welfare."

Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye, 4 Va. App. at 536, 359 S.E.2d at 319).

Moreover,

a child need not be in a desperate situation before an adoption may be ordered over the natural parent's objection. Each case must be carefully considered on its own facts and circumstances and a showing of abandonment, unfitness or other extreme parental misconduct, while significant, does not always have to be shown before the adoption may be granted without parental consent.

Frye, 4 Va. App. at 536, 359 S.E.2d at 319.

The evidence supports the trial court's findings that Reed's continued relationship with CJR would be detrimental to the child, that the adoption of CJR by Hersam was in the child's best interest and that Reed unreasonably withheld consent to the adoption.

Reed, who has been incarcerated the child's entire life, has had no relationship with CJR. Moreover, it was Reed's criminal activity that thwarted him from seeing CJR and establishing any relationship. The child, who was six years old at the time of the hearing, knows little if anything about Reed and certainly does not view Reed as his father. The evidence indicated that Reed has made inappropriate references in correspondence to CJR and that Reed has an aggressive personality of which mother is apprehensive. Even if Reed is released in 2007, he and CJR, who

-

would be twelve at the time, would be virtual strangers.  Reed's ability to work and support CJR is limited due to medical problems.  Meanwhile, CJR lives in a caring and loving environment with his mother and the only man he has ever identified as his father.  The Hersams provide CJR with financial and emotional support, and the child is thriving with the only family he has ever known.  Accordingly, the judgment of the trial court is affirmed.

Affirmed.
